ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL VI

| | | |
|---|---|---|
| GM SECTEC, CORP.<br><br>Parte Recurrente<br><br><br>v.<br><br><br>MUNICIPIO AUTÓNOMO DE GUAYNABO JUNTA DE SUBASTAS<br><br>Parte Recurrida<br><br><br>GENESIS SECURITY SERVICES, INC.<br>(Licitador Agraciado) | TA2026CE00519 | *Certiorari acogido como Revisión Judicial,* procedente de la Junta de Subastas del Municipio Autónomo de Guaynabo<br><br><br>Solicitud núm.:<br>26- RFP-004<br><br><br>Sobre:<br>Notificación de Adjudicación de la Solicitud de Propuestas para el sistema de vigilancia virtual para el Programa De Seguridad Pública, Guaynabo PR |

Panel integrado por su presidenta, la Jueza Romero García, el Juez Monge Gómez y la Jueza Prats Palerm.[1]

Monge Gómez, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 19 de mayo de 2026.

Compareció ante este Tribunal la parte recurrente, GM SECTEC, LLC (en adelante ("GM" o "Recurrente"), mediante un recurso de revisión judicial presentado el 27 de abril de 2026. Nos solicitó la revocación de la *Notificación de Adjudicación de la Solicitud de Propuestas Núm. 26-RFP-004)* (en adelante, "Notificación") emitida por la Junta de Subastas del Municipio Autónomo de Guaynabo (en adelante, la "Junta" o "Recurrido"), el 14 de abril de 2026, notificada y archivada en autos el 16 del mismo mes y año. Mediante el referido dictamen, la Junta adjudicó la buena pro del requerimiento de propuestas núm. 26-RFP-004 a Genesis Security Services, Inc.

Por los fundamentos que expondremos a continuación, *confirmamos* la *Notificación* recurrida.

---

[1] De conformidad con la OATA-26-045, se designó a la Hon. Giselle Romero García, en sustitución del Hon. Felipe Rivera Colón, quien dejó de ejercer funciones como Juez del Tribunal de Apelaciones, efectivo el 4 de mayo de 2026.

**I.**

El presente caso tuvo su origen el 5 de noviembre de 2025, con la publicación del "**Aviso de Solicitud de Propuestas Núm. 26-RFP-004**" en el periódico de circulación general El Vocero de Puerto Rico, mediante el cual se invitó a proveedores cualificados a someter propuestas para la prestación de servicios de un sistema de vigilancia virtual para el Programa de Seguridad Pública del Municipio de Guaynabo. En atención a dicha convocatoria, un total de siete (7) proponentes presentaron oportunamente sus respectivas propuestas, a saber: (1) GMSectec Corp.; (2) Genesis Security Services, Inc.; (3) Bermúdez, Longo, Díaz-Masso LLC; (4) ARIMAR, Inc.; (5) Ellipsis LLC; (6) International Security Experts Corp.; y (7) PDF Corp.

Posteriormente, mediante la *Resolución Núm. 87, Serie 2025-2026*, la Junta designó el correspondiente Comité Evaluador para la Solicitud de Propuestas 26-RFP-004. Tras el análisis de las propuestas sometidas, dicho Comité emitió un Informe de Evaluación exhaustivo en el que recomendó la adjudicación de la buena pro a la entidad Genesis Security Services, Inc. Dicho informe detalla, entre otros aspectos: (1) la identificación de los proponentes y una síntesis de sus propuestas; (2) los criterios y factores considerados en el proceso de evaluación y adjudicación; y (3) las deficiencias en las propuestas de los proponentes no seleccionados.

Finalmente, el 14 de abril de 2026, la Junta de Subastas emitió la correspondiente "**Notificación de Adjudicación de la Solicitud de Propuestas (26-RFP-004) para el Sistema de Vigilancia Virtual del Programa de Seguridad Pública del Municipio de Guaynabo, Puerto Rico**" mediante la cual acogió, unánimemente, el Informe del Comité y adjudicó la buena pro de la Solicitud de Propuestas Núm. 26-RFPR-004 a Genesis Security Services, Inc.

Inconforme con esta decisión, el Recurrente acudió ante este Tribunal mediante el recurso de epígrafe, en el que señaló la comisión de los siguientes errores:

PRIMER ERROR: ERRÓ LA JUNTA DE SUBASTAS AL CONCLUIR QUE LA PROPUESTA DE GM SECTEC COTIZÓ UNA PROPUESTA ECONÓMICA DE $14,910,513.00.

SEGUNDO ERROR: ERRÓ LA JUNTA DE SUBASTAS AL ADJUDICAR LA BUENA PRO A UNA OFERTA QUE RESULTA

IRRAZONABLEMENTE BAJA EN LA COTIZACIÓN DE LOS EQUIPOS Y SERVICIOS DE INSTALACIÓN Y CONFIGURACIÓN.

El 11 de mayo de 2026, el Recurrido presentó su "**Alegato del Municipio Autónomo de Guaynabo**".

Con el beneficio de la comparecencia de las partes procedemos a resolver.

## II.

## A.

Es norma reiterada en nuestro ordenamiento jurídico que los tribunales apelativos están llamados a abstenerse de intervenir en las decisiones administrativas, ya que éstas poseen una presunción de legalidad y corrección. ECP Incorporated v. OCS, 205 DPR 268, 281 (2020); Torres Rivera v. Policía de PR, 196 DPR 606, 626 (2016). Cónsono con ello, se ha resuelto que las decisiones de las agencias administrativas gozan de la mayor deferencia por los tribunales. Oficina de Ética Gubernamental v. Martínez Giraud, 210 DPR 79, 88-89 (2022). Ello debido a que dichos entes gubernamentales son los que poseen el conocimiento especializado y experiencia en los asuntos que les son encomendados. Super Asphalt v. AFI, 206 DPR 803, 819 (2021). En los casos de revisión judicial, "[e]l criterio a aplicarse no es si la decisión administrativa es la más razonable o la mejor al arbitrio del foro judicial; es, repetimos, si la determinación administrativa, en interpretación de los reglamentos y las leyes que le incumbe implementar, es una razonable". Rivera Concepción v. A.R.Pe, 152 DPR 116, 124 (2000).

La Sección 4.5 de la LPAU, dispone que "[l]as determinaciones de hechos de las decisiones de las agencias serán sostenidas por el tribunal, si se basan en evidencia sustancial que obra en el expediente administrativo". 3 LPRA sec. 9675. Así pues, la intervención judicial en estos casos ha de centrarse en tres aspectos principales: (1) si el remedio concedido fue apropiado; (2) si las determinaciones de hechos están razonablemente sostenidas por la prueba y (3) si las conclusiones de derecho del organismo administrativo son correctas. P.R.T.C. Co. v. J. Reg. Tel. de P.R., 151 DPR 269, 281 (2000). Podemos decir que la deferencia reconocida a la decisión de una agencia administrativa cede

en las siguientes circunstancias: cuando no está basada en evidencia sustancial, cuando el organismo administrativo ha errado en la aplicación de la ley y cuando ha mediado una actuación irrazonable o ilegal. T-JAC, Inc. v. Caguas Centrum Limited, 148 DPR 70, 80 (1999).

Las determinaciones de hechos de los organismos y agencias administrativas tienen a su favor una presunción de regularidad y corrección. Henríquez v. Consejo Educación Superior, 120 DPR 194, 210 (1987). De manera que los tribunales apelativos no intervienen con las determinaciones de hechos formuladas por una agencia administrativa si éstas están sostenidas por evidencia sustancial que surja del expediente administrativo. Asoc. Vec. H. San Jorge v. U. Med. Corp., 150 DPR 70, 75 (2000).

Según lo ha definido el Tribunal Supremo en diversas ocasiones, evidencia sustancial es "aquella evidencia relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión". Hilton Hotels v. Junta Salario Mínimo, 74 DPR 670, 687 (1953). Por ello, quien impugne las determinaciones de hechos de una agencia administrativa tiene el deber de presentar ante el foro judicial la evidencia necesaria que permita, como cuestión de derecho, descartar la presunción de corrección de la determinación administrativa. El peso de la prueba descansa entonces sobre la parte que impugna la determinación administrativa. Com. Vec. Pro-Mej., Inc. v. J.P., 147 DPR 750, 761 (1999). Además, debe demostrar que existe otra prueba en el expediente que reduzca o menoscabe el valor probatorio de la evidencia impugnada, hasta el punto de que no se pueda concluir que la determinación de la agencia fue razonable de acuerdo con la totalidad de la prueba que tuvo ante su consideración. Rebollo v. Yiyi Motors, 161 DPR 69, 76-77 (2002).

Las conclusiones de derecho, tal y como surge de la Sección 4.5 de la LPAU, *supra*, pueden ser revisadas en todos sus aspectos. 3 LPRA sec. 9675. Sin embargo, esto no significa que, al ejercer su función revisora, podamos descartar liberalmente las conclusiones e interpretaciones de la agencia, sustituyendo el criterio de ésta por el propio. "Al evaluar los casos es necesario distinguir entre cuestiones de interpretación estatutaria, en la que los tribunales

son especialistas, y cuestiones propias para la discreción o pericia administrativa". Adorno Quiles v. Hernández, 126 DPR 191, 195 (1990).

El foro judicial podrá sustituir el criterio del organismo administrativo por el propio únicamente en aquellas ocasiones que no encuentre una base racional que fundamente la actuación administrativa. No obstante, es axioma judicial que, ante la prueba pericial y documental, el tribunal revisor se encuentra en igual posición que el foro recurrido y, por tanto, está facultado para apreciar la prueba apoyándose en su propio criterio. Dye-Tex de P.R., Inc. v. Royal Ins. Co., 150 DPR 658, 662 (2000).

Sin embargo, la deferencia judicial en la revisión de determinaciones administrativas no conlleva la renuncia de este Tribunal a su función revisora. Simplemente, define el carácter limitado de la función revisora a casos apropiados. La deferencia reconocida no equivale a la dimisión de la función revisora de este foro apelativo intermedio en instancias adecuadas y meritorias, como resulta ser cuando la agencia ha errado en la aplicación de la ley. Reyes Salcedo v. Policía de P.R., 143 DPR 85, 94 (1987).

**B.**

Según se ha reiterado, la subasta tradicional y el requerimiento de propuestas (*request for proposals* o *RFP*) son los mecanismos de adquisición de bienes y servicios que utilizan las agencias del Ejecutivo y los municipios. PR Eco Park, Inc. et al. v. Mun. de Yauco, 202 DPR 525, 531 (2019). Por medio de ambos, se persigue proteger los intereses del Estado o del ayuntamiento, toda vez que su enfoque está dirigido en obtener "los precios más económicos; evitar el favoritismo, la corrupción, el dispendio, la prevaricación, la extravagancia y el descuido al otorgarse los contratos, y minimizar los riesgos de incumplimiento". Caribbean Communications v. Pol. de P.R., 176 DPR 978, 994 (2009).

Distinto a la subasta tradicional, el RFP se distingue por constituirse como un procedimiento informal y flexible que viabiliza que el oferente pueda negociar con el gobierno central o municipal y enmendar o revisar las propuestas antes de la adjudicación de un contrato sobre adquisición de bienes y servicios. R & B Power v. E.L.A., 170 DPR 606, 621 (2007). Así, se recurre a este mecanismo de adquisición "cuando se trata de bienes o servicios especializados que

involucran aspectos altamente complejos o cuando existen escasos competidores cualificados". CD Builders v. Mun. Las Piedras, 196 DPR 336, 345 (2016). No obstante lo anterior, el aspecto principal que sirve de brújula para determinar quién resulta favorecido está atado a proteger el interés público. Caribbean Communications v. Pol. de P.R., *supra*, pág. 994.

Desde esa perspectiva, son las agencias gubernamentales las llamadas a establecer los parámetros a seguir en sus propios procesos de adjudicación de subastas. Perfect Cleaning v. Cardiovascular, 162 DPR 745, 757 (2004). De conformidad con dicha prerrogativa, se ha resuelto reiteradamente que las agencias gozan de gran discreción en el proceso de evaluación de propuestas para adquisición de bienes y servicios, ello está cimentado en el postulado de que éstas ostentan gran experiencia y especialización que las posicionan en mejor posición que los foros judiciales a la hora de seleccionar el postor que mejor le sirva al interés público. Caribbean Communications v. Pol. de P.R., *supra*, pág. 1006.

A pesar de que los requerimientos de propuestas se caracterizan de la subasta formal por ser más flexibles, el RFP debe contener los parámetros que se utilizarán para la adjudicación del contrato. CD Builders, Inc. v. Municipio de Las Piedras, 196 DPR 336, 345-346 (2016). Es decir, es indispensable que los requerimientos, los términos y las condiciones, así como los factores que han de considerarse en la evaluación para la adjudicación de la subasta se delimiten claramente. Íd. Sin embargo, indistintamente de cuál sea el proceso seleccionado por la agencia, una vez se adjudica la buena pro, salvo que se demuestre que la adjudicación se efectuó arbitraria o caprichosamente o que medió fraude o mala fe, los foros judiciales estamos impedidos de sustituir nuestro criterio por el de la agencia administrativa o municipio. Caribbean Communications v. Pol. de P.R., *supra*, pág. 1006.

De otra parte, sabido es que los municipios están expresamente excluidos de la definición de "agencia" que dispone la Ley Núm. 38-2017, según emendada, conocida como la "Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico", 3 LPRA secs. 9601 *et seq*. Así pues, tanto las subastas formales como los requerimientos de propuestas que efectúan los

ayuntamientos están regulados por la Ley Núm. 107-2020, según enmendada, conocida como el "Código Municipal de Puerto Rico", 21 LPRA secs. 7001 *et seq*. Conforme lo establece el Artículo 2.038 del Código Municipal, todos los municipios tienen la obligación de constituir una Junta de Subastas. 21 LPRA sec. 7214. Durante el proceso de adjudicación, la Junta de Subastas tomará en consideración que "las propuestas sean conforme a las especificaciones, los términos de entrega, la habilidad del postor para realizar y cumplir con el contrato, la responsabilidad económica del licitador, su reputación e integridad comercial, la calidad del equipo, producto o servicio y cualesquiera otras condiciones que se hayan incluido en el pliego de subasta". 21 LPRA sec. 7216 (a).

A pesar de ello, dicha disposición estatutaria le confiere la discreción a dicho ente municipal para adjudicar a un postor que no sea necesariamente el más bajo o el más alto, si con ello se beneficia el interés público. Bajo esas circunstancias, "la Junta deberá hacer constar por escrito las razones aludidas como beneficiosas al interés público que justifican tal adjudicación". Íd. Durante ese proceso, la Junta de Subasta tiene la potestad de rechazar la licitación de un postor cuando entienda que el licitador carece de responsabilidad, tiene deuda con el municipio, el gobierno central o gobierno federal y/o "que la naturaleza o calidad de los suministros, materiales o equipo no se ajustan a los requisitos indicados en el pliego de la subasta, o que los precios cotizados se consideren como irrazonables o cuando el interés público se beneficie con ello". 21 LPRA sec. 7216 (b).

**III.**

En el presente caso, GM nos solicitó la revocación de la *Notificación* de la Junta, a través de la cual se le adjudicó la buena pro del Requerimiento de Propuestas Núm. 26-RFP-004 a Genesis Security Services, Inc.

Los señalamientos de error esgrimidos se encuentran íntimamente relacionados, por lo que se abordarán de manera conjunta en la discusión. En síntesis, el Recurrente sostiene que la Junta erró al: (1) concluir que la propuesta de GM cotizó una propuesta económica de $14,910,513.00 y al (2) adjudicar la

buena pro a una oferta que resulta irrazonablemente baja en la cotización de los equipos y servicios de instalación y configuración.

Del expediente ante nuestra consideración surge que la Junta publicó un "**Aviso de Solicitud de Propuestas Núm. 26-RFP-004**" en el periódico de circulación general El Vocero de Puerto Rico, mediante el cual invitó a proveedores cualificados a someter propuestas para la prestación de servicios de un Sistema de Vigilancia Virtual dirigido al Programa de Seguridad Pública del Municipio de Guaynabo, Puerto Rico. En particular, el proceso se dividió en varias etapas, a saber: (1) una evaluación inicial de cumplimiento bajo el esquema de "pass or fail", (2) una evaluación de cumplimiento con las especificaciones técnicas y, finalmente y (3) la evaluación de las propuestas económicas. A medida que se iban evaluando los renglones, la Junta fue descartando propuestas. De la primera etapa, solo cumplieron GM y Genesis, quienes pasaron a la segunda y también cumplieron con las especificaciones. Entonces, solo fueron GM Sectec Corp. y Genesis Security Services, Inc., los únicos considerados en la etapa final de evaluación. Para propósitos de esta etapa, la Junta evaluaría el aspecto económico a base de una fórmula matemática, la cual se desglosa a continuación: *Precio Propuesto Más Bajo (costo total) ÷ Precio Propuesto por el Oferente (costo total)* × 48 (puntuación máxima) = *Puntuación de la Propuesta Económica*.

Es sobre este aspecto es que GM basa parte de sus argumentos que, según su postura, justifican revocar la *Notificación* emitida por la Junta. Específicamente, GM sostiene que el monto evaluado no fue su "best and final", sino la cantidad original sometida que ascendía a $14,910,513.00. Sobre el particular, expone que ello tuvo el efecto de conferir una indebida ventaja a un licitador por encima de éste al cuantificar un criterio en función de un valor que no correspondía a la oferta económica finalmente sometida.

Al examinar la *Notificación* y el expediente del RFP que nos ocupa, notamos que "best and final offer" que la Junta utilizó con respecto a GM fue la cantidad de $13,998,404.00. Sobre este número, es menester destacar que el Recurrente expuso que el mismo sería el que se utilizaría en la prestación de los servicios, con la salvedad de que, debido a la situación económica a nivel

9

internacional, sus proveedores podían incrementar los precios cada 30 días. Así, al momento de utilizar la fórmula, la puntuación de GM obtuvo fue 11.78. Entonces, esa fue la puntuación utilizada por la Junta para tomar su decisión, según fue consignado en la *Notificación*. Ello contrasta con el argumento traído por el Recurrente en su recurso al exponer que su puntuación fue de 11.64. No le asiste la razón GM al exponer que la Junta no utilizó su "best and final offer" al momento de adjudicar el RFP que nos ocupa. De hecho, de la *Notificación* se desprende con meridiana claridad que la Junta procedió a recalcular las puntuaciones en el renglón económica con dicho valor; descartando así la cuantía original de $14,910,513.00 en el proceso adjudicativo de las propuestas. Del legajo apelativo surge claramente cómo la puntuación del Recurrente aumentó a 58.78 puntos de los 58.64 puntos calculados con el monto original ofrecido en su propuesta. Por tanto, en cuanto a este particular, no hallamos que la Junta se hubiera equivocado en su adjudicación.

Por otro lado, en lo relativo al segundo planteamiento traído ante nos, GM sostiene que la Junta incidió porque los costos de los equipos y programas que propuso, el "hardware and software", sin incluir *shipping*, *handling* e IVU de importación de los mismos, equivale a unos $3.5 millones. Mientras, sostiene, que Genesis cotizó $3.6 millones totales por todo el proyecto e incluyendo servicios tales como instalaciones y mantenimientos por 3 años. Concluye, por tanto, que dicha oferta resultaba irrazonablemente baja y un riesgo de incumplimiento en la prestación del servicio. En vista de lo anterior, arguye que la actuación de la Junta constituyó un abuso de discreción.

Conforme hemos adelantado en los acápites anteriores, un requerimiento de propuestas es un método de licitación utilizado para la adquisición de bienes, obras y servicios no profesionales, que permite la negociación entre el oferente y la agencia administrativa durante la evaluación de las propuestas recibidas. Este procedimiento reviste de un gran interés público, ya que involucra el uso de fondos provenientes del erario público. Caribbean Communications v. Pol. de PR, *supra*, pág. 994. Así pues, las agencias administrativas y los municipios están habilitados para establecer las normas de su propio procedimiento de adjudicación y disponen de una considerable discreción al evaluar las

propuestas que se someten a su consideración. Íd., págs. 993-994. Esto pues, las agencias son las que poseen el conocimiento especializado en los asuntos que adjudican, y no los tribunales, lo que las coloca en una mejor posición para seleccionar al postor más idóneo. En consonancia con lo anterior, una vez adjudicada la buena pro, los tribunales no debemos reemplazar el criterio de la junta en cuestión, a menos que se demuestre que la determinación fue tomada de manera arbitraria, caprichosa, fraudulentamente o de mala fe. Íd., pág. 1006.

Tras un análisis exhaustivo y riguroso del expediente ante nuestra consideración, incluyendo el RFP, la *Notificación* de la Junta, las correspondientes propuestas y el expediente administrativo del caso, hemos arribado a la conclusión de que la Junta no abusó de su discreción al adjudicar el Requerimiento de Propuestas Núm. 26-RFP-004 a Genesis Security Services, Inc. Nos explicamos.

De entrada, es menester destacar que no surge del expediente que la Junta haya alterado los criterios de evaluación previamente establecidos ni que haya aplicado los mismos de forma desigual entre los proponentes. Por el contrario, se desprende que la evaluación se llevó a cabo conforme a una metodología clara y uniforme.

En detalle, la propuesta de GM consistió de lo siguiente:

> GMSectec, Corp., presenta como objetivo de su propuesta establecer un Servicio de Gestión de Video (Video Management System- VMS), integral y actualizado en todas las localidades designadas por el Municipio. Según su propuesta, los beneficios de sus servicios incluyen la implementación de sistema de seguridad virtual que abarcan un enfoque holístico, incorporando vigilancia por video con análisis avanzados. De igual modo, destacan que su operación es desde cuatro (4) Centros de Monitoreo Remoto estratégicamente posicionados; tres (3) de estos centros están en Puerto Rico, y un centro adicional en México. La metodología de GM Sectec Corp. se basa en un enfoque estructurado de Evaluación, Diseño, Implementación y Mantenimiento ("EDIM"), la cual comprende una evaluación detallada, la revisión en sitio de las 433 ubicaciones, análisis de la infraestructura electrónica y validación de los tipos de cámaras, su cantidad, baterías, entre otros factores.[2]

Por su parte, la propuesta de Genesis Security Services, Inc. se resume en lo siguiente:

> Genesis Security Services, Inc., (en adelante "GSS") foe fondada el 5 de marzo de 1997 con el fin de ofrecer soluciones

---

[2] *Véase*, SUMAC-TPI, Entrada Núm. 1.

confiables de seguridad. GSS cuenta con una fuerza laboral con sobre cinco mil oficiales de seguridad, mas de100 supervisores con experiencia en el control operacional y respuesta a emergencias. Entre sus capacidades tecnológicas disponibles para el Municipio se incluyen, entre otras: (1) sistema de videovigilancia en alta definición (CCTV), (2) monitoreo remoto entiempo real, (3) sistemas de grabación continua en almacenamiento seguro, (4) análisis de video inteligente y detección de eventos, (5) integración de control de acceso con sistemas de vigilancia, (6) alarmas de intrusión y sensores especializados, (7) servicios de consultoría, diseño e implementación de infraestructura, (8) Centro de Monitoreo las 24 horas del día, siete días a la semana, por la duración del contrato. Se adelanta que el equipo propuesto por GSS cuenta con una garantía de tres (3) años y es de la marca "Hanwha Vision".

En detalle, las 210 cámaras que corresponden a intersecciones, corredores viales, zonas comerciales y puntos estratégicos del municipio serían la unidad de PNM-9085RQZ1 Wise Net que se describe como multidireccional, fácil de instalar y con análisis de videos. Mientras, las 233 cámaras que corresponden a instalaciones municipales serían la unidad XNV-A8084R que se describe como una resolución máxima, uso de inteligencia artificial, visión diurna y nocturna, entre otros factores.

La solución propuesta por GSS contempla una arquitectura de servicios de manejo de video basado en un modelo híbrido, el cual integra almacenamiento en la nube por el periodo requerido y su sincronización controlada hacia infraestructura local ("on premise"), incluyendo arreglos de almacenamiento tipo SAN con capacidad mínima de retención de 30 días de grabaciones. Estos servicios también permiten el monitoreo en tiempo real, acceso concurrente a video en vivo e histórico, la ejecución de búsquedas inteligentes apoyadas en inteligencia artificial, analítica avanzada, generación en alertas automatizadas, así como el monitoreo proactivo del estado de los dispositivos y de las comunicaciones.[3]

Al analizar la *Notificación* en controversia, diferimos de la apreciación del Recurrente. Coincidimos con el Municipio a los efectos de que lo verdaderamente irrazonable e insostenible en derecho, salvo circunstancias particularizadas, hubiera sido adjudicar una propuesta de $13,998,404.00 contra una de $3,435,955.77 que cumplió cabalmente con todas las especificaciones, los requisitos técnicos y criterios de infraestructura de videovigilancia, almacenamiento, gestión de video y operación del sistema. El mero hecho de que una propuesta sea menor que otra no permite concluir, sin más, que la misma es irrealizable o que conlleva un riesgo de incumplimiento. Tal inferencia constituiría una especulación que carece de apoyo en el expediente administrativo. Antes, bien surge del expediente que la Junta evaluó la propuesta de Genesis Security Services, Inc. de forma integral, tomando en consideración

---

[3] *Véase*, <u>SUMAC-TA</u>, Entrada Núm. 1.

su capacidad técnica, su experiencia en proyectos de similar envergadura, su infraestructura operativa y su capacidad financiera. A base de dicha evaluación, concluyó que el proponente contaba con los recursos necesarios para cumplir con los requisitos del proyecto; determinación que merece deferencia por parte de este foro revisor.

Además, el que una propuesta sea la de menor costo no implica automáticamente que los servicios a ofrecer carecerán de calidad ni que la agencia se verá afectada. Afirmar lo opuesto supondría una evaluación de la *Notificación* basada en conjeturas, ajenas a los criterios que deben guiar nuestra función revisora en este tipo de procedimientos. De hecho, salvo que el interés público lo justifique, la adjudicación debe recaer en el postor razonable más bajo.

En conclusión, dado a que del legajo apelativo no se desprende que la *Notificación* de la Junta fue tomada de manera arbitraria, caprichosa, fraudulentamente o de mala fe, corresponde que *confirmemos* su decisión. Resolver lo contrario implicaría sustituir el conocimiento especializado de la Junta, lo que contraviene nuestro ordenamiento legal.

Por todo lo anterior, concluimos que no se cometieron los errores esgrimidos por el Recurrente.

**IV.**

Por los fundamentos que anteceden, los cuales hacemos formar parte integral de la presente *Sentencia*, *confirmamos* la *Notificación* emitida por la Junta.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones